# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| *Ex rel.,* Michael J. Fisher, and Michael Fisher § | |
| Individually, and Brian Bullock, and Brian § | |
| Bullock, Individually § | |
| § | CIVIL ACTION NO 4:12-CV-461 |
| v. § | Judge Mazzant |
| § | |
| HOMEWARD RESIDENTIAL, INC. f/k/a § | |
| AMERICAN HOME MORTGAGE § | |
| SERVICING, INC. § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Homeward Residential, Inc.'s Third Rule 12(b)(1) Motion to Dismiss, Rule 56 Motion for Summary Judgment (Dkt. #82). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

On July 25, 2012, Relator Michael J. Fisher ("Fisher" or "Relator") filed his original complaint under seal (Dkt. #1). In his original complaint, Fisher alleged that Homeward Residential, Inc. ("Homeward") did not provide disclosures required by the Truth in Lending Act ("TILA") and Regulation Z with any of its Home Affordable Modification Program ("HAMP") or non-HAMP modifications (Dkt. #1).

On June 4, 2014, the Court ordered that the complaint be unsealed and served upon Defendant, after the United States declined to intervene (Dkt. #27). On October 9, 2014, Defendant filed its Rule 12(b)(6) and Rule 9(b) Motion to Dismiss (Dkt. #33) and its Rule 12(b)(1) Motion to Dismiss and Rule 56 Motion for Summary Judgment (Dkt. #34).

On October 16, 2014, Relators filed their Sealed Motion to Seal *Qui Tam* Relators' First Amended Complaint (Dkt. #38) and *Qui Tam* Relators' First Amended Complaint (Dkt. #39).

1

The First Amended Complaint incorporated new allegations including: (1) Federal Housing Administration ("FHA") violations, (2) Dodd-Frank Act violations, (3) Real Estate Settlement Procedures Act ("RESPA") violations, and (4) Texas, New York, and Massachusetts state law violations (Dkt. #39). It also added a new relator, Brian Bullock ("Bullock" or "Relator") (Dkt. #39). On October 31, 2014, the Court denied Relators' Sealed Motion to Seal *Qui Tam* Relators' First Amended Complaint (Dkt. #54). On November 3, 2014, the Court denied Defendant's motions to dismiss as moot (Dkt. #60).

On January 9, 2015, Defendant filed its Third Rule 12(b)(1) Motion to Dismiss, Rule 56 Motion for Summary Judgment (Dkt. #82). On January 26, 2015, Relators filed their Response in Opposition to Defendant's Third Rule 12(b)(1) Motion to Dismiss and Rule 56 Motion for Summary Judgment (Dkt. #89). Defendant filed its reply on February 5, 2015 (Dkt. #93). Relators filed their sur-reply on February 17, 2015 (Dkt. #99).

**LEGAL STANDARD**

Defendant moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and alternatively moves for summary judgment under Rule 56. The Court has subject matter jurisdiction over those cases arising under federal law. U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1331. A case arises under federal law if the complaint establishes that federal law creates the cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Empire Healthchoice Assur. Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006).

A 12(b)(1) motion to dismiss should be granted only if it appears beyond a doubt that the plaintiff cannot prove a plausible set of facts to support its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 556-57 (2007))

(stating that the court reviews a 12(b)(1) motion as it would a 12(b)(6) motion). However, the court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane*, 529 F.3d at 557 (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden for a 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

However, the Fifth Circuit has held that a challenge to jurisdiction under the public disclosure bar of the False Claims Act ("FCA") is "'necessarily intertwined with the merits' and is, therefore, properly treated as a motion for summary judgment." *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 516 (N.D. Tex. 2012) (quoting *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011)) (quoting *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173-74 (5th Cir. 2004)). Therefore, the court must view the evidence and the inferences drawn from the evidence in the light most favorable to the non-moving party, and find the absence of jurisdiction only if there is no genuine issue of material fact. *Jamison*, 649 F.3d at 326; *Reagan*, 384 F.3d at 173-74; *see* FED. R. CIV. P. 56(a). When evaluating a motion for summary judgment, a court may not weigh

the evidence or evaluate the credibility of witnesses. *Reagan*, 384 F.3d at 173.

## ANALYSIS

"The [FCA] is designed to allow suits 'by private parties on behalf of the United States against anyone submitting a false claim to the government.'" *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 441 (5th Cir. 2008) (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 941 (1997)). The FCA "promot[es] private citizen involvement in exposing fraud against the government," while "prevent[ing] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *Id.* (quoting *Reagan*, 384 F.3d at 174).

The FCA limits the subject matter jurisdiction of federal courts over *qui tam* actions and states:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii) from the news media
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).[1] The Fifth Circuit has adopted a three-part test for analyzing whether a court has subject matter jurisdiction under the public disclosure bar: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based

---

[1] Because some of the claims alleged in Relators' First Amended Complaint took place before the 2010 amendment took effect, the prior disclosure provision also applies. Prior to the 2010 amendment, the public disclosure provision stated:
   (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
31 U.S.C. § 3730(e)(4)(A) (2006).

4

upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." *Colquitt*, 864 F. Supp. 2d at 517 (quoting *Reagan*, 384 F.3d at 173-74).

However, the court is not required to rigidly follow the three steps. *Jamison*, 649 F.3d at 327; *see Fried*, 527 F.3d at 442 (court can combine first two steps). "[C]ombining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one." *Id.*

When determining if an action is barred by the public disclosed provision, the defendant bears the burden to point to documents or transactions on which the relator's complaint is based. *See id.* "[O]nce the opposing party has identified public documents that could plausibly contain allegations or transactions upon which the relator's action is based, the relator bears the burden of demonstrating that they do not." *Id.*

*Public Disclosure of Allegations or Transactions*

Defendant argues that the First Amended Complaint is based upon allegations that were publicly disclosed prior to its filing (Dkt. #82 at p. 6). Defendant points to a New York Consent Order, a Consumer Financial Protection Bureau ("CFPB") Consent Judgment, and news media reports as qualifying public disclosures for purposes of the FCA's public disclosure bar (Dkt. #82 at p. 6). Defendant further asserts that all of the claims in the FAC are barred and it does not matter that the FAC cites specific violations that are not mentioned in the New York Consent Order, the CFPB Consent Judgment, or the news media reports (Dkt. #82 at p. 8). Relators allege that the New York Consent Order is not a qualifying public disclosure because the federal government is not a party to the agreement (Dkt. #89 at p. 5). Additionally, they argue that the CFPB Consent Order is not a qualifying public disclosure because it "does not set forth *any*

5

allegations as to Homeward's wrongdoings" (Dkt. #89 at p. 7).

In December 2012, Ocwen Loan Servicing, LLC ("Ocwen") and the New York Department of Financial Services ("NY Department") entered into an Agreement on Mortgage Servicing Practices (the "Consent Order"), following alleged concerns by the NY Department with details relating to Ocwen's rapid growth, including Ocwen's acquisition of servicing rights from Homeward (Dkt. #82 at p. 2; *See* Dkt. #82, Exhibit A at pp. 1-2).

In December 2013, Ocwen executed a Consent Judgment with the CFPB and 49 states (Dkt. #82 at p. 3; Dkt. #82, Exhibit B). The complaint alleged that Ocwen committed misconduct relating to the servicing of single family residential mortgages, including that of Homeward and Litton Loan Servicing, L.P. prior to their acquisition by Ocwen (Dkt. #82 at p. 3; Dkt. #82, Exhibit C at ¶ 1). Additionally, it alleged that the servicers had violated state unfair and deceptive trade practices laws and the Consumer Financial Protection Act of 2010 (Dkt. #82 at p. 3; Dkt. #82, Exhibit C at ¶¶ 20-30). Both the New York Consent Order and the CFPB Consent Judgment were reported by the news media (Dkt. #82 at p. 4, Dkt. #82, Exhibit D, E, F, G).

To analyze whether the court has subject matter jurisdiction under the public disclosure bar, the court must determine whether there has been a public disclosure of allegations or transactions, and whether the *qui tam* action is based on those publicly disclosed allegations. *See Colquitt*, 864 F. Supp. 2d at 517. A FCA *qui tam* action even partly based upon public allegations or transactions is nonetheless barred. *Reagan*, 384 F.3d at 176.

The first element of the public disclosure bar is whether there has been a public disclosure of allegations or transactions. *See Colquitt*, 864 F. Supp. 2d at 517. "[T]he key for determining whether allegations or transactions have been publicly disclosed is whether 'the

6

critical elements of the fraudulent transaction were in the public domain.'" *Colquitt*, 864 F. Supp. 2d at 519 (quoting *United States ex rel. Heath v. Dall./Fort Worth Int'l Airport Bd.*, No. 3:99-cv-100-M, 2004 WL 1197483, at *5 (N.D. Tex. May 28, 2004)) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)). "The critical elements have been sufficiently disclosed if the disclosure, taken together, would enable the government to draw an inference of fraud." *Id.* In that respect, the best method to assess whether the bar applies is through the following formula: "if X +Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements." *Springfield Terminal*, 14 F.3d at 654. Therefore, "[i]n order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed." *Id.*

Defendant argues that the New York Consent Order, the CFPB Consent Judgment, and the related news media reports constitute public disclosures under the FCA public disclosure bar (Dkt. #82 at pp. 6-8). Relators assert that the New York Consent Order does not constitute a public disclosure as it does not meet the requirements of § 3730(e)(4)(A) (*See* Dkt. #82 at p. 5). They further allege that the CFPB Consent Judgment does not qualify as a public disclosure as it does not assert any wrongdoings as to Homeward (Dkt. #82 at p. 7).

The Court agrees with Relators that the New York Consent Order and the CFPB Consent Judgment do not constitute public disclosures within the meaning of § 3730(e)(4)(A). The New York Consent Order does not bar any of Relators' allegations that relate to Homeward's conduct after March 2010 because the order did not arise from a federal hearing in which the government was a party, nor did it arise from a federal report.[2] Additionally, the Consent Order does not set

---

[2] With regards to Relators' allegations regarding Homeward's conduct prior to March 2010, the Court finds that the Consent Order does not bar the allegations because it does not expose each essential element of the claims set forth

7

forth the specific allegations that are addressed within Relators' FAC. The Court also finds that the CFPB Consent Judgment is not a public disclosure within the meaning of § 3730(e)(4)(A). The CFPB Consent Judgment does not set forth any allegations against Homeward, and therefore, would not have alerted the Government as to any allegations of fraud as to Homeward. However, the media reports pertaining to the New York Consent Order and the CFPB Consent Judgment could be considered public disclosures. Therefore, the Court must determine whether Relators' FAC is "based upon" those disclosed allegations.

The second element of the jurisdictional bar is whether the relator's case is "based upon the public disclosure of allegations or transactions." *Colquitt*, 864 F. Supp. 2d at 523 (citing 31 U.S.C. § 3730). This requirement is satisfied when the relator's suit is supported by the publicly disclosed allegations or transactions; therefore, the suit need not be actually derived from the earlier public disclosure itself. *Id.* "An FCA qui tam action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." *Reagan*, 384 F.3d at 176; *see Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995). Therefore, a claim is barred if it alleges additional instances of fraud by a defendant if previous instances have been publicly disclosed. *See Colquitt*, 864 F. Supp. 2d at 523.

Defendant alleges that the media reports about the New York Consent Order and the CFPB Consent Judgment are qualifying public disclosures under either version of the public disclosure bar (Dkt. #93 at p. 2). Additionally, Defendant alleges that the news media reports repeat several of the allegations asserted within the FAC (Dkt. #93 at p. 2). Relators assert that none of the articles set forth substantially the same claims as alleged within Relators' FAC (Dkt. #89 at p. 6).

---

in the FAC.

The Court agrees with Relators that the news reports do not set forth substantially the same allegations as Relators' FAC. First, the article Defendant attaches citing the New York Consent Order consists of an article from Bloomberg and an article from the National Mortgage Professional (Dkt. #82, Exhibit D, E). Neither article sets forth substantially the same claims as those alleged within Relators' FAC. For example, the Bloomberg article states that in "some instances Ocwen failed to provide a single point of contact for borrowers and pursued foreclosures against borrowers who sought loan modifications." (Dkt. #82, Exhibit E). The National Mortgage Professional states that Homeward

> (1) failed to demonstrate that it sent out 90-day notices before commencing foreclosure or notices stating that it had standing; (2) failed to provide the single point of contact for borrowers; (3) pursued foreclosure against borrowers seeking a modification; (4) failed to conduct an independent review of denials of loan modifications; and (5) failed to ensure that the borrower and loan information was accurate and up-to-date.

(Dkt. #89 at p. 6; *See* Dkt. #82, Exhibit D). Relators' FAC sets forth a number of additional violations including: (1) FHA violations; (2) Dodd-Frank Act violations; (3) RESPA violations; (4) Texas, New York, and Massachusetts state law violations; and (5) failing to self-report under the Government's HAMP program (Dkt. #39). The Court finds that the allegations in the media reports regarding the New York Consent Order and the allegations within Relators' FAC are different claims and not substantially the same. Therefore, the news reports regarding the New York Consent Order are not qualifying public disclosures under § 3730(e)(4)(A).

The news reports regarding the CFPB Consent Judgment also do not set forth substantially the same allegations as Relators' FAC. The news reports cited by Defendant merely summarize the allegations within the CFPB Consent Complaint. Additionally, the New York Times article mentions that Homeward is "accused of charging borrowers unauthorized fees, deceiving consumers about foreclosure alternatives and providing false or misleading

9

information about the status of foreclosure proceedings." (Dkt. #82, Exhibit F). The Washington Post article cites to the CFPB Complaint and states that Homeward "failed to apply borrowers' payments to their loans, failed to maintain accurate account statements, charged unauthorized fees," "provided false or misleading information to borrowers," "failed to provide accurate and timely information to borrowers about loan modifications," and "improperly denied loan-modification relief to eligible borrowers." (Dkt. #82, Exhibit G). As explained above, the Realtors' FAC goes beyond the allegations set forth in the CFPB Complaint, as well as the media reports cited by Defendant.

Additionally, Defendant alleges that it does not matter that the FAC cites specific violations of certain statutes or administrative regulations that were not particularly mentioned in the New York Consent Order or the CFPB Consent Judgment "because the underlying conduct at issue in the FAC...is the same conduct referenced in the regulatory settlements" (Dkt. #82 at p. 8). However, the public disclosures do not disclose the essential elements within Relators' causes of action. *See, e.g.*, *Springfield Terminal*, 14 F.3d at 654 (explaining that disclosure does not qualify unless it discloses each "essential element"). Therefore, because the news reports do not disclose the essential elements within each cause of action in Relators' FAC, the Court finds that the media reports are not qualifying public disclosures for the purposes of § 3730(e)(4)(A).

*Original Source*[3]

When a FCA *qui tam* action is based on publicly disclosed allegations or transactions, "the court does not have jurisdiction unless the relator is 'an original source of the information.'" *Colquitt*, 864 F. Supp. 2d at 524 (citing 31 U.S.C. § 3730(e)(4)(A)). An original source is:

> an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations

---

[3] Although the Court finds that there was no public disclosure of Relators' allegations in the present case, it will address Defendant's claim for dismissal under the original source prong of the public disclosure bar.

or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(B).[4]

A relator's "direct and independent knowledge" is based upon the information on which the allegations in the complaint are based, not the information on which the publicly disclosed allegations are based. *Colquitt*, 864 F. Supp. 2d at 524. To be "'direct,' the information must be firsthand knowledge." *Id.* (quoting *Fried*, 527 F.3d at 442-43). "In order to be 'independent,' the information known by the relator cannot depend or rely on the public disclosures." *Id.* Therefore, a relator need not be the original source of every element of his claim, but he must do more than apply his knowledge, experience, or investigation to publicly disclosed information. *See id.* at 525.

Defendant alleges that Relators cannot demonstrate that their knowledge is independent of the publicly disclosed information within the New York Consent Order, the CFPB Consent Judgment, or the news media reports (Dkt. #82 at p. 9). Defendant also asserts that Relators state the same information within the FAC and do not show that it is qualitatively different or materially adds to the publicly disclosed information (Dkt. #82 at pp. 9-10). Relators allege that they had direct, firsthand knowledge of Homeward's violations based upon their direct involvement in the loan modification process (Dkt. #89 at p. 12).

The Court finds that there is adequate evidence suggesting that Relators are original sources of the claims and allegations asserted against Defendant in the present action. The information from which Relators' claims are derived is based upon their independent

---

[4] Prior to the 2010 Amendment, an original source was "a person who ha[d] direct and independent knowledge of the information on which the allegations [were] based and ha[d] voluntarily provided the information to the Government before filing an action." 31 U.S.C. §3730(e)(4)(B).

observations from either their employment within Homeward or from helping individuals obtain loan modifications from Homeward. Relator Fisher states that he "learned information, allegations and transactions upon which this lawsuit is based directly, in the course of [his] employment, by assisting borrowers in their attempts to obtain home loan modifications from Homeward." (Dkt. #89 at p. 11). Relator Bullock states that he worked at Homeward in various positions from April 2009 through September 2014, where he learned the information pertaining to the allegations in the complaint (Dkt. #89 at p. 12). Both Relators had direct, first-hand knowledge regarding Homeward's alleged violations given their direct involvement in the loan modification process. Therefore, the Court finds that the Relators' claims against Homeward are not barred by the public disclosure bar.

## CONCLUSION

Based on the foregoing, the Court finds that Homeward Residential, Inc.'s Third Rule 12(b)(1) Motion to Dismiss, Rule 56 Motion for Summary Judgment (Dkt. #82) is hereby **DENIED**.

SIGNED this 17th day of June, 2015.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE