# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel.,* Michael J. Fisher, and Michael Fisher | § | |
| Individually, and Brian Bullock, and Brian | § | |
| Bullock, Individually | § | |
| | § | CIVIL ACTION NO 4:12-CV-543 |
| v. | § | Judge Mazzant |
| | § | |
| OCWEN LOAN SERVICING, LLC and | § | |
| OCWEN FINANCIAL CORPORATION | § | |


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel.,* Michael J. Fisher, and Michael Fisher | § | |
| Individually, and Brian Bullock, and Brian | § | |
| Bullock, Individually | § | |
| | § | CIVIL ACTION NO 4:12-CV-461 |
| v. | § | Judge Mazzant |
| | § | |
| HOMEWARD RESIDENTIAL, INC. f/k/a | § | |
| AMERICAN HOME MORTGAGE | § | |
| SERVICING, INC. and OCWEN | § | |
| FINANCIAL CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Ocwen Loan Servicing, LLC, Ocwen Financial Corporation, and Homeward Residential, Inc.'s Consolidated Motion for Summary Judgment Under Rule 56 (Dkt. #225 *in 4:12-cv-461*, Dkt. #292 *in 4:12-cv-543*).  After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

The Home Affordable Modification Program ("HAMP") is a voluntary program created by the United States Treasury to incentivize loan servicers to modify home loans and prevent foreclosures (Dkt. #225 at p. 16; Dkt. #292 at p. 16).  Defendants are mortgage servicers that have voluntarily participated in HAMP since the program's inception (Dkt. #225 at p. 16; Dkt.

#292 at p. 16).

HAMP requires that every participating loan servicer execute a Servicer Participation Agreement ("SPA"), in which it agrees to certain "representations and warranties" made "with respect to its participation in the Program[]."  (Dkt. #225 at p. 16; Dkt. #292 at p. 16) (quoting Exhibit G at p. 2; Exhibit H at p. 2).  To participate in the HAMP program, the SPA required companies to represent their compliance with applicable federal and state laws in an initial "Financial Instrument[,]" which was attached to the SPA, and in "Annual Certifications" each year thereafter."  (Dkt. #225 at pp. 16-17; Dkt. #292 at pp. 16-17) (citing Exhibit G at p. 2; Exhibit K at pp. 21-22).  Servicers were also required to represent and warrant that they would engage in loan modifications consistent with HAMP rules and regulations (Dkt. #225 at p. 17; Dkt. #292 at p. 17) (citing Exhibit G at pp. 14-15; Exhibit H at p. 21).

OLS represented its compliance when it executed the SPA and Amended SPA on April 16, 2009, and September 9, 2010 (Dkt. #225 at p. 17; Dkt. #292 at p. 17).  It also executed annual certifications beginning on September 29, 2010, and continuing through the present (Dkt. #225 at p. 17; Dkt. #292 at p. 17).  Homeward certified its compliance when it executed the SPA on July 10, 2009, and when it executed its required annual certifications on September 30, 2010, and February 1, 2012 (Dkt. #225 at p. 18; Dkt. #292 at p. 18).

The Federal Housing Administration (the "FHA") offers single-family mortgage insurance programs that encourage private lenders and services to provide mortgage loans to borrowers who might not otherwise qualify.  (Dkt. #225 at p. 23; Dkt. #292 at p. 23); s*ee* 12 U.S.C. § 1709.  If borrowers default on their loans, lenders may apply to the FHA for insurance benefits to make them whole.  (Dkt. #225 at p. 23; Dkt. 292 at p. 23); s*ee generally,* 24 C.F.R. §§ 203.400-203.414.

To be approved for participation in the FHA program, a lender or mortgagee has to satisfy several requirements, including "submit[ting] an annual certification on a form prescribed by the Secretary."  (Dkt. #225 at p. 23; Dkt. #292 at p. 23); 24 C.F.R. § 202.5.  The FHA certification requires program participants to certify compliance with a broad range of regulations (Dkt. #225 at p. 23; Dkt. #292 at p. 23).   A lender's failure to comply with any certification under the mortgage-insurance program authorizes the U.S. Department of Housing and Urban Development ("HUD") to initiate an administrative action before the Mortgagee Review Board and impose a variety of remedies (Dkt. #225 at p. 24; Dkt. #292 at p. 24).

*The Homeward Action (the 4:12-cv-461 Action)*

On July 25, 2012, Relator Michael J. Fisher ("Fisher" or "Relator") filed his original complaint under seal (Dkt. #1 *in 4:12-cv-461*).   In his original complaint, Fisher alleged that Homeward Residential, Inc. ("Homeward") did not provide disclosures required by the Truth in Lending Act ("TILA") and Regulation Z with any of its HAMP or non-HAMP modifications (Dkt. #1 *in 4:12-cv-461*).

On June 4, 2014, the Court ordered that the complaint be unsealed and served upon Defendant, after the United States declined to intervene (Dkt. #27 *in 4:12-cv-461*).   On October 16, 2014, Relators filed *Qui Tam* Relators' First Amended Complaint (Dkt. #39 *in 4:12-cv-461*).  The First Amended Complaint incorporated new allegations including: (1) Federal Housing Administration ("FHA") violations, (2) Dodd-Frank Act violations, (3) Real Estate Settlement Procedures Act ("RESPA") violations, and (4) Texas, New York, and Massachusetts state law violations (Dkt. #39 *in 4:12-cv-461*).   It also added a new relator, Brian Bullock ("Bullock" or "Relator") (Dkt. #39 *in 4:12-cv-461*).

On March 3, 2015, Relators filed their second amended complaint (Dkt. #101 *in 4:12-cv-*

Case 4:12-cv-00461-ALM   Document 304   Filed 05/24/16   Page 4 of 14 PageID #:  14975

461). The second amended complaint added a new defendant, Ocwen Financial Corporation ("OFC") (Dkt. #101 *in 4:12-cv-461*).

On December 22, 2015, Defendants filed their Motion for Summary Judgment under Rule 56 (Dkt. #225 *in 4:12-cv-461*). On January 29, 2016, Relators filed their response (Dkt. #255 *in 4:12-cv-461*). On February 10, 2016, Defendants filed their reply (Dkt. #280 *in 4:12-cv-461*). On February 19, 2016, Relators filed their sur-reply (Dkt. #287 *in 4:12-cv-461*).

On May 9, 2016, Defendants filed their Unopposed Motion for Leave to File Notice of Supplemental Authority (Dkt. #301 *in 4:12-cv-461*), which the Court granted on May 12, 2016 (Dkt. #302 *in 4:12-cv-461*). Defendants' Notice of Supplemental Authority was filed on May 9, 2016 (Dkt. #300 *in 4:12-cv-461*). On May 12, 2016, Relators filed their response (Dkt. #303 *in 4:12-cv-461*).

*The Ocwen Action (the 4:12-cv-543 Action)*

On August 20, 2012, Fisher filed his original complaint under seal (Dkt. #1 *in 4:12-cv-543*). In his original complaint, Fisher claimed that Ocwen Loan Servicing LLC's ("OLS") HAMP modifications violated TILA because OLS did not provide a TILA notice of rescission in connection with its loan modifications. (*See* Dkt. #1 *in 4:12-cv-543*).

On April 7, 2014, United States Magistrate Judge Don Bush ordered that the complaint be unsealed and served upon Defendant, after the United States declined to intervene (Dkt. #19 *in 4:12-cv-543*). On August 1, 2014, Relator filed his amended complaint (Dkt. #23 *in 4:12-cv-543*). On August 6, 2014, Relator filed his second amended complaint (Dkt. #29 *in 4:12-cv-543*).

On November 13, 2014, Relators filed their third amended complaint (Dkt. #59 *in 4:12-cv-543*). The third amended complaint incorporated allegations including: (1) Federal Housing

Administration ("FHA") violations, (2) Dodd-Frank Act violations, (3) Real Estate Settlement Procedures Act ("RESPA") violations, and (4) Texas, New York, and Massachusetts state law violations (Dkt. #59 *in 4:12-cv-543*).  It also added Bullock as a new relator (Dkt. #59 *in 4:12-cv-543*).

On April 17, 2015, Relators filed their fourth amended complaint (Dkt. #126 *in 4:12-cv-543*).  This complaint added OFC as a defendant, and alleged that OFC made false representations to the government, which induced the government to enter the SPA (*See* Dkt. #126 *in 4:12-cv-543*).  The fourth amended complaint also claims that OFC is the parent company of OLS (Dkt. #126 *in 4:12-cv-543*).

On December 22, 2015, Defendants filed their Motion for Summary Judgment under Rule 56 (Dkt. #292 *in 4:12-cv-543*).  On January 29, 2016, Realtors filed their response (Dkt. #339 *in 4:12-cv-543*).  On February 10, 2016, Defendants filed their reply (Dkt. #369 *in 4:12-cv-543*).  On February 19, 2016, Relators filed their sur-reply (Dkt. #383 *in 4:12-cv-543*).

On May 9, 2016, Defendants filed their Unopposed Motion for Leave to File Notice of Supplemental Authority (Dkt. #405 *in 4:12-cv-543*), which the Court granted on May 12, 2016 (Dkt. #406 *in 4:12-cv-543*).  Defendants' Notice of Supplemental Authority was filed on May 9, 2016 (Dkt. #404 *in 4:12-cv-543*).  On May 12, 2016, Relators filed their response (Dkt. #408 *in 4:12-cv-543*).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material.  *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49).  The nonmovant must adduce affirmative evidence.  *Anderson*, 477 U.S. at 257.  No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden.  *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004).  Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant.  *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).  The Court must consider all of the

evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants assert that they are entitled to summary judgment because Fifth Circuit precedent establishes that a certification of legal compliance, even if false, cannot support an FCA claim unless the government program conditions payments on legal compliance (Dkt. #225 at p. 3; Dkt. #292 at p. 3); *see United States ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014); *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262 (5th Cir. 2010) ("*Steury I*"); *United States ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384 (5th Cir. 2008). Specifically, the Court is to decide (1) whether the SPA and annual certifications, which Relators alleged contain false certifications of compliance, constitute a false claim under the FCA, and (2) whether Defendants' allegedly false FHA certifications and related alleged misrepresentations constitute false claims under the FCA.[1] Relators assert that the Court should deny Defendants' motion as the certifications of compliance are conditions of payment, and Defendants did not address several theories of recovery under the FCA or Relators' claim for fraudulent inducement (Dkt. #255 at pp. 2-3; Dkt. #339 at pp. 2-3).[2]

"The [FCA] is designed to permit 'suits by private parties on behalf of the United States

---

[1] In their response, Relators assert that Defendants failed to address numerous false representations including within Relators' complaint and Defendants failed to address Relators' fraudulent inducement claim (Dkt. #255 at p. 18; Dkt. #339 at p. 18). In their reply, Defendants assert that Relators' fraudulent inducement claims and "other breached SPA promises" fail as a matter of law (Dkt. #280 at p. 14; Dkt. #369 at p. 14). However, the Court will not consider these arguments, as Defendants did not include this issue within the issues to be decided by the Court. Local Rule CV-56; *see* L.R. CV-7 ("Each pleading, motion or response to a motion must be filed as a separate document…."). Therefore, to the extent that Defendants are requesting summary judgment on these issues, the Court will deny their request.

[2] As a preliminary matter, Relators assert that the Court already addressed this issue in its order regarding Defendants' Motion to Dismiss (Dkt. #255 at p. 2; Dkt. #339 at p. 2) (citing Dkt. #117; Dkt. #181). However, the Court's Order was based off the sufficiency of the pleadings and did not address the question under a summary judgment standard, and thus will address the issue. To the extent the Court did address this issue within its previous order, the Court will address Defendants' arguments as they relate to the second amended complaint (Dkt. #101 *in 4:12-cv-461*) and the fourth amended complaint (Dkt. #126 *in 4:12-cv-543*).

against anyone submitting a false claim to the government.'" *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 441 (5th Cir. 2008) (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 941 (1997)).  "Section 3729(a)(1) imposes civil penalties and treble damages on any person who 'knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." *Westbrook*, 751 F.3d at 364. The FCA also "imposes civil penalties and treble damages on any person who, inter alia, 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" *Steury I*, 625 F.3d at 267 (citing 31 U.S.C. § 3729(a)(1)(B) (2009)). Therefore, "[i]n order to establish a violation of the False Claims Act, a plaintiff must show that: (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the Government to pay out money or to forfeit moneys due...." *United States ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683, 695 (N.D. Miss. 2012) (citing *United States ex rel. Longhi v. Lithium Power Tech. Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citations omitted)).

Claims can either be legally false or factually false.  *See Jamison*, 900 F. Supp. 2d at 696 ("Thus, those claims are alleged to be legally false, as opposed to factually false."). "To be 'legally false,' the [Relators] must prove that the claimant knowingly falsely certified that it complied with a statute or regulation of which compliance is a condition for Government payment." *Jamison*, 900 F. Supp. 2d at 696 (quoting *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 678 (5th Cir. 2008)).  Courts have divided legally false claims into two catergories:  expressly false and impliedly false claims.  *Id.*, 900 F. Supp. 2d at 696.

8

Under the express false certification theory, "an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." *Id.* (citing *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 303 (3d Cir. 2008)).   Therefore, "where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statue or regulation." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997) (false certification on annual cost reports that entity is compliant with anti-kickback statute can establish FCA liability).   However, if "an [] express certification does not state that compliance is a prerequisite to payment, [the court] must look to the underlying statutes to surmise if [the statutes] make the certification a condition of payment." *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1218 (10th Cir. 2008); *see Southland Mgmt. Corp.*, 288 F.3d at 679.

The implied certification theory under the FCA is "based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Steury I*, 625 F.3d at 268 (quoting *Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001) (internal quotations omitted)).   Therefore, "[u]nder an implied false certification theory,…courts do not look to the [] actual statements; rather, the analysis focuses on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Conner*, 543 F.3d at 1218; *see United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000); *see also Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 531-33 (10th Cir. 2000).   The Fifth

Circuit has not recognized this theory, and has avoided recognizing the implied certification theory of liability on several occasions. *See, e.g., Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 476 n. 6 (5th Cir. 2012); *Marcy*, 520 F.3d at 389; *United States ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 381-82 (5th Cir. 2003); *United States ex rel. Stebner v. Stewart & Stephenson Servs., Inc.*, 144 F. App'x 389, 394 (5th Cir. 2005).

Defendants argue that Relators have not alleged that Defendants either made a false claim for payment or caused such a claim to made through its records or statements.  In Defendants' view, Relators merely allege that Defendants failed to follow federal and state regulations, a fault not punishable under the FCA.  *See Willard*, 336 F.3d at 381.

The Court disagrees and holds that Relators do allege a claim for payment.  Specifically, Relators allege that

> the evidence demonstrates that the certificates of compliance (and other representations, covenants, and warranties) are conditions precedent to payment under HAMP. […] Because the certifications of compliance (and other representations, warranties, and covenants) are contained in the Financial Instrument, executing it and complying with it are explicitly conditions precedent to payment of the incentive payments.

(Dkt. #255 at p. 22; Dkt. #339 at p. 22).  Additionally, "Defendants also acknowledge in the Financial Instrument and subsequent annual certifications 'that the provision of false or misleading information to Fannie Mae or Freddie Mac in connection with the Program or pursuant to the Agreement may constitute a violation of…the civil False Claims Act (31 U.S.C. §§ 3729-3733).'"  (Dkt. #255 at p. 23; Dkt. #339 at p. 23).

Defendants argue that Treasury's ability to redress noncompliance through remedies other than withholding payment confirms that legal compliance is not a condition of payment (Dkt. #225 at p. 30; Dkt. #292 at p. 30).  However, the Court finds that the alternative remedies do not foreclose an FCA claim.  Defendants assert that "the Fifth Circuit's decisions in *Marcy*,

10

*Steury I*, and *Westbrook* are directly on point and require summary judgment here."  (Dkt. #225 at p. 30; Dkt. #292 at p. 30).  However, after reviewing the cases cited by Defendants, the Court finds that the cases are distinguishable.

> In *Westbrook*, the court states as follows:
>
> Spicer relies heavily on FAR clause 52.246-2, which imposed a duty on Navistar Defense to inspect the MRAPs to ensure compliance with the CARC requirements of the contract.  Yet, as an initial matter, we observe that nowhere in the First Amended Compliant does Spicer allege that Navistar Defense was required to certify compliance with FAR clause 52.246-2 in order to receive payment.  Spicer therefore does not satisfy the prerequisite requirement by invoking FAR clause 52.246-2.

751 F.3d at 366.  Additionally, in *Marcy*, the Fifth Circuit "resolv[ed the] appeal based on the requirement of materiality for any claim made."  *Marcy*, 520 F.3d at 389.  As to whether the plaintiff has properly stated a claim for purposes of Section 3729(a)(2), the 5th Circuit stated

> We do not decide whether Marcy has properly identified a claim for purposes of Section 3729(a)(2).  Resolving that issue would necessarily require us to determine whether implied certifications may be claims under the Act.  This Court has previously deferred that question, and we do so again today.

*Id.*  Finally, in *Steury I*, the plaintiff based her claims on an implied certification theory of liability.  625 F.3d at 267-68.  Like *Marcy*, the Court did not address whether the implied certification theory presented a claim under the FCA because the plaintiff's amended complaint did not provide a factual basis for implying false certification.  *Id.* at 268.

The Court finds that the alleged false certifications, in the present case, are different than those in Defendants' cited cases.  First, the alleged false certifications in the present case involve an express certification theory of liability, not an implied theory of liability.  Relators have demonstrated express statements within the SPA and the annual certifications, in which Defendants, or their representatives certify the following:

> The following constitute events of default under the Agreement

[…]
(4) Any representation, warranty, or covenant made by Servicer in the Agreement or any Annual Certification is or becomes materially false, misleading, incorrect, or incomplete.

[…]

B.  Fannie Mae may take any, all, or none of the following action upon an <u>Event of Default by Servicer</u> under the Agreement:

(1) Fannie Mae may: (i) withhold some or all of the Servicer's portion of the Purchase Price until, in Fannie Mae's determination, Servicer has cured the default; and (ii) choose to utilize alternative means of paying any portion of the Purchase Price for the credit or account of borrowers and investors and delay paying such portion pending adoption of such alternative means.

(2) Fannie Mae may:  (i) reduce the amounts payable to Servicer under Section 4.B; and/or (ii) require repayment of prior payments made to Servicer under Section 4.B…

(3) Fannie Mae may require Servicer to submit to additional Program administrator oversight…

(4) Fannie Mae may terminate the Agreement and cease its performance…

(5) Fannie Mae may require Servicer to submit to information and reporting with respect to its financial condition and ability to continue to meet its obligations under the Agreement.

(Dkt. #255, Exhibit 1; Dkt. #339, Exhibit 1).   Additionally,  in  the  attached  Financial

Instrument, Defendants certify the following:

Servicer is in compliance with, and covenants that all Services will be performed in compliance with, all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements, including, but not limited to, the Truth in Lending Act, 15 USC 1601 § et seq., the Home Ownership and Equity Protection Act, 15 USC § 1639, the Federal Trade Commission Act, 15 USC § 41 et seq., the Equal Credit Opportunity Act, 15 USC § 701 et seq., the Fair Credit Reporting Act, 15 USC § 1681 et seq., the Fair Housing Act and other Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices and all applicable laws governing tenant rights.

[…]

Servicer acknowledges that the provision of false or misleading information to Fannie Mae or Freddie Mac in connection with any of the Programs or pursuant to the Agreement may constitute a violation of:  (a) Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code; or (b) the civil False Claims Act (31 U.S.C. §§ 3729-3733). Servicer covenants to disclose to Fannie Mae and Freddie Mac any credible evidence, in connection with the Services, that a management official, employee, or contractor of Servicer has committed, or may have committed, a violation of the referenced statutes.

(Dkt. #255, Exhibits 1, 9; Dkt. #339, Exhibits 1, 9).

Defendants also argue that Treasury's continued distribution of HAMP loan-modification incentive payments, after its determination that servicers, including Defendants, were not in compliance confirms that payment is not a condition on compliance (Dkt. #225 at p. 31; Dkt. #292 at p. 31). Relators assert that "Government knowledge might be relevant to Defendants' *scienter* or materiality in certain limited circumstances, such as when 'the government's knowledge is so complete as to disprove that Defendants' false claims were made knowingly.'" (Dkt. #255 at pp. 31-32; Dkt. #339 at pp. 31-32) (quoting *United States ex rels. DeKort v. Intergrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 543-44 (N.D. Tex. 2010) (whether extent of government knowledge is sufficient to preclude scienter is issue of fact that should not be resolved at motion to dismiss state.) (emphasis omitted)). Defendants have not argued that summary judgment is appropriate because of a lack of *scienter* or materiality, and thus, the Court find that summary judgment should be denied as to the issue of government knowledge.[3] [4]

Defendants also assert that summary judgment should be granted as to Defendants' FHA Certifications. Specifically, Defendants assert that Relators' theory fails as a matter of law because regulatory compliance is not a condition for payment of FHA mortgage insurance (Dkt. #225 at pp. 34-35; Dkt. #292 at pp. 34-35). Relators cite to *United States v. Americus Mortgage Corp.*, No. 4:12-cv-02676, 2013 WL 4829271 (S.D. Tex. Sept. 10, 2013), for the proposition that Defendants' allegedly false certifications under HUD-FHA regulations do constitute claims of

---

[3] Defendants have also not demonstrated that Treasury had full knowledge of the alleged violations or the extent to which Defendants were allegedly falsely certified within the SPA or the annual certifications. Therefore, the Court finds that this issue is not appropriate for summary judgment determination.

[4] On May 9, 2016, Defendants filed their Notice of a Supplemental Authority, in which Defendants' cite to *United States ex rels. Bishop v. Wells Fargo & Co.*, No. 15-2449 (2d Cir. May 5, 2016), as dispositive to the issues addressed in their motion for summary judgment (Dkt. #300 at pp. 1-2; Dkt. #404 at pp. 1-2). After reviewing the case and Relators' response, the Court finds that *Bishop* is not dispositive to the present case, and Defendants are merely addressing the same arguments are were previously addressed in their motion and reply brief.

payment under the FCA (Dkt. #225 at p. 39; Dkt. #339 at p. 39).  For the same reasons as stated above, the Court finds that summary judgment should be denied as to the FHA claims.

Therefore, after reviewing the relevant pleadings, the Court finds that Defendants have not met their burden of demonstrating that there is no material of fact entitling it to judgment as matter of law.  The case should proceed to trial.

## CONCLUSION

It is therefore **ORDERED** that Ocwen Loan Servicing, LLC, Ocwen Financial Corporation, and Homeward Residential, Inc.'s Consolidated Motion for Summary Judgment (Dkt. #225 *in 4:12-cv-461*; Dkt. #292 *in 4:12-cv-543*) is hereby **DENIED**.

**SIGNED this 24th day of May, 2016.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE