# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| OCWEN FINANCIAL CORPORATION and PHH MORTGAGE CORPORATION § § § *Plaintiffs,* § § v. § § SAMUEL L. BOYD, BOYD & § ASSOCIATES, and JEAN-MARC § EICHNER § § *Defendants.* § | Civil Action No. 4:12-CV-461 Civil Action No. 4:12-CV-543 |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Samuel L. Boyd and Boyd & Associates' request for the Court to enforce the Protective Orders and conduct an *in camera* review of certain documents. Having considered the request and the relevant briefing, the Court finds that Samuel L. Boyd and Boyd & Associates' request should be **GRANTED in part**.

## BACKGROUND

This matter involves two (2) *qui tam* cases that both terminated in 2017 (4:12-CV-461, Dkt. #385; 4:12-CV-543, Dkt. #593). *United States ex. rel. Fisher v. Homeward Residential, Inc.*, 4:12-CV-461 (E.D. Tex.); *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 4:12-CV-543 (E.D. Tex.).[1] Samuel L. Boyd and Boyd & Associates ("Boyd") request that the Court enforce two (2) identical protective orders (collectively, the "Protective Orders") to preclude the production of certain documents to Ocwen Financial Corporation and PHH Mortgage Corporation

---

[1] All citations to docket entries within the two (2) underlying *qui tam* cases are preceded by a case number to indicate which case the docket entry corresponds to.

(collectively, "Ocwen") in litigation in Texas state court (4:12–CV–461, Dkt. #307; 4:12–CV–543, Dkt. #447).

This matter began in the summer of 2012 with the filing of two (2) *qui tam* cases, in which Boyd served as counsel to multiple relators (4:12–CV–461, Dkt. #1; 4:12–CV–543, Dkt. #1). The relators alleged that Ocwen Financial Corporation, among others, violated various federal, state, and local laws in the residential mortgage industry (4:12–CV–461, Dkt. #101; 4:12–CV–543, Dkt. #126). Both cases ultimately settled (4:12–CV–461, Dkt. #327; 4:12–CV–543, Dkt. #528).

To facilitate discovery in both cases and to prevent the improper disclosure of confidential information, the parties entered the Protective Orders. (4:12–CV–461, Dkt. #307; 4:12–CV–543, Dkt. #447). Following the termination of each respective case, the Protective Orders required a party's counsel to destroy or return protected confidential information that the counsel had received:

> Upon termination of this action, by dismissal, judgment, or settlement, and the exhaustion of all appeals, counsel for the Receiving Party shall destroy or return the Protected Information to the counsel for the Designating Party within ninety (90) days of termination of this litigation.

(4:12–CV–461, Dkt. #307 ¶ 15; 4:12–CV–543, Dkt. #447 ¶ 15). However, the Protective Orders allow a party's counsel to retain their own work product, even if it refers or relates to otherwise protected confidential information:

> The Receiving Party shall keep their attorney work product which refers or relates to any Protected Information. Attorney work product may be used in subsequent litigation provided that such use does not disclose Protected Information.

(4:12–CV–461, Dkt. #307 ¶ 15; 4:12–CV–543, Dkt. #447 ¶ 15).[2] Further, the Protective Orders provide the Court with continuing jurisdiction to enforce the Protective Orders:

> After termination of this litigation, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Information for enforcement of the provisions of this Order following termination of this litigation.

(4:12–CV–461, Dkt. #307 ¶ 14; 4:12–CV–543, Dkt. #447 ¶ 14). Boyd claims that his co-counsel, Fish and Richardson, in the earlier cases possessed all documents produced and maintained a database containing said documents. *Relators' Mem. Regarding Ocwen and Its Counsel's Most Egregious Recent Statements to this Court and the State Court, Ocwen Fin. Corp. v. Boyd*, 4:23–CV–408 (E.D. Tex. Mar. 19, 2024), Dkt. #32, Exhibit 10 at p. 8. Although Boyd did not maintain or obtain such a database, he claims that he had access to search and review documents in the database. *Id.* Boyd states that after the conclusion of the two (2) underlying *qui tam* cases, he collected, categorized, and kept a "small fraction" of the documents produced in the earlier cases "for purposes of other ongoing sealed claims and future litigation" (4:12–CV–461, Dkt. #432, Exhibit 1 ¶¶ 20, 22–23, 25–27). The documents within this compilation have many different authors. These authors range from unrelated third parties, to Ocwen Financial Corporation, to

---

[2] The textual interpretation of a court order is ultimately a legal question. *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014). The Protective Orders define "Receiving Party" as "counsel for [a] party" to "which [protected confidential information is] disclosed or produced." (4:12–CV–461, Dkt. #307 ¶ 1; 4:12–CV–543, Dkt. #447 ¶ 1). In a different paragraph, the Protective Orders indicate in a parenthetical that "Receiving Party" in the context of "Qualified Persons" includes "attorneys for the United States who are monitoring the litigation" (4:12–CV–461, Dkt. #307 ¶ 5(a); 4:12–CV–543, Dkt. #447 ¶ 5(a)). This distinction indicates that the term "Receiving Party" does not include attorneys for the United States when attorneys for the Relators received confidential information to avoid rendering the parenthetical superfluous (*See* 4:12–CV–461, Dkt. #307 ¶ 5(a); 4:12–CV–543, Dkt. #447 ¶ 5(a)). Therefore, when counsel for the Relators is a Receiving Party, the work product they may retain does not include the work product of attorneys for the United States (*See* 4:12–CV–461, Dkt. #307 ¶ 16; 4:12–CV–543, Dkt. #447 ¶ 16). However, the selection of work product belonging to an attorney for the United States to include Boyd's compilation of documents is a distinct matter.

Boyd, to the Department of Justice (4:12–CV–461, Dkt. #432, Exhibit 2). However, Ocwen and his fellow co-counsel for the relators (and their agents) did not author the vast majority of these documents (4:12–CV–461, Dkt. #432, Exhibit 2). Further, he argues that this collection of 670 documents constitutes his attorney work product because the selection reveals "his mental process and evaluation of the most highly significant documents produced." *Relators' Mem. Regarding Ocwen and Its Counsel's Most Egregious Recent Statements to this Court and the State Court, Ocwen Fin. Corp. v. Boyd*, 4:23–CV–408, Dkt. #32, Exhibit 10 at pp. 8–9. These documents contain over 27,000 pages in total, although many entries on Boyd's privilege log do not provide a page count (4:12–CV–461, Dkt. #432, Exhibit 2).

On July 15, 2019, Boyd, acting in his representative capacity as an attorney, filed another *qui tam* suit against Ocwen Financial Corporation and others on behalf of his clients, Jean-Marc Eichner ("Eichner") and Brandon Loyd ("Loyd"). *Relators' Compl. Pursuant to 31 U.S.C. §§ 3829–3732 (Federal False Claims Act), United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*, 4:19–CV–524 (E.D. Tex. July 15, 2019), Dkt. #1). The relators alleged that the defendants violated various federal, state, and local laws. *Relators' Am. Compl. Pursuant to 31 U.S.C. §§ 3829–3732 (Federal False Claims Act), United States ex rel. Eichner*, 4:19–CV–524 (E.D. Tex. Oct. 23, 2023), Dkt. #114). This most recent *qui tam* litigation is still ongoing.

On April 11, 2023, Ocwen brought suit against Boyd and Eichner in the 416th District Court of Collin County for breach of contract, tortious interference, fraudulent inducement. *Pls.' Original Pet.*, 4:23–CV–408 (E.D. Tex May 5, 2023), Dkt. #6. Ocwen claims that Boyd "induced Ocwen to pay $30 million to settle [False Claims Act litigation that] he initiated and prosecuted against Ocwen by falsely representing to Ocwen that it was buying an end to litigation." *Id.* ¶ 10.

4

Further, Ocwen asserts that "before the ink was even dry on [the settlement agreements], Boyd was scheming to sue Ocwen again, for the exact same conduct, in breach of the release and covenant not to sue he agreed to in return for a significant portion of the settlement proceeds." *Id.*

On May 5, 2023, Boyd and Eichner removed the Texas state court action to this Court based on federal question jurisdiction. *Notice of Removal*, 4:23–CV–408 (E.D. Tex. May 5, 2023), Dkt. #1. Subsequently, the Court remanded the case to the 416th District Court of Collin County because no federal question jurisdiction existed in the case. *Memorandum Opinion and Order*, 4:23–CV–408 (E.D. Tex. Nov. 20, 2023), Dkt. #29.

In the Texas state court action, Boyd filed a motion to dismiss the action under Texas Rule of Civil Procedure 91a and the Texas Citizens Participation Act.[3] *Order*, 4:23–CV–408 (E.D. Tex. March 19, 2024), Dkt. #32, Exhibit 3 at p. 2. In relation to Boyd's motion, Judge Andrea Thompson authorized limited discovery. *Id.* Within this limited discovery, Ocwen specifically seeks all documents that Boyd sent to the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"), a government entity. *March 6, 2024 Email*, 4:23–CV–408 (E.D. Tex. March 19, 2024), Dkt. #32, Exhibit 6 at p. 2.

SIGTARP's involvement in this matter began in 2017 after both *qui tam* cases settled, when it sent two (2) subpoenas to Boyd seeking all documents produced to Boyd in the two (2) underlying *qui tam* cases by any party, including Ocwen Financial Corporation. *Subpoena Duces*

---

[3] On April 14, 2024, Boyd filed a notice to inform the Court that the underlying Texas state court action is currently stayed due to an interlocutory appeal about the denial of Eichner's motion to dismiss pursuant to the Texas Citizen's Participation Act. *Notice of Stay of State Ct. Case and Renewed Request for this Ct.'s Review of Privilege Log Documents as Predicate for Enforcement of Protective Orders*, 4:23-CV-408, Dkt. #39. Boyd further "re-urge[s his] prior request that the Court review the materials addressed in Boyd's privilege log." *Id.* On April 26, 2024, Ocwen filed a response. *Ocwen Financial Corporation and PHH Mortgage Corporation's Obj. and Resp. to Defs.' Notice of Stay of State Ct. Case and Renewed Request for this Ct.'s Review of Privilege Log*, 4:23-CV-408, Dkt. #40. The Court has reviewed these filings, and they do not impact the Court's analysis.

5

*Tecum*, 4:23-CV-408, Dkt. #32, Exhibit 6 at pp. 15-25; *Subpoena Duces Tecum*, 4:23-CV-408, Dkt. #32, Exhibit 6 at pp. 26-36. Boyd produced documents to SIGTARP in response to the two (2) subpoenas. *See Def.'s Notice of Filing Am. Privilege Log*, 4:23-CV-408 (E.D. Tex. March 22, 2024), Dkt. #36.

The present dispute between Boyd and Ocwen is whether Boyd must produce to Ocwen the same documents that Boyd sent to SIGTARP. Boyd claims that the production of these documents would violate the Protective Orders because these documents are all Boyd's work product. *Defs.' Br. Pursuant to Ct.'s Instr. of March 13, 2024*, 4:23-CV-408 (E.D. Tex. Mar 21, 2024), Dkt. #34 ¶ 8. Ocwen and Boyd disagree on whether the Court or the 416th District Court of Collin County should determine whether the documents at issue are Boyd's work product and whether Boyd must produce the documents at issue to Ocwen. *See, e.g., id.* ¶¶ 8-9; *Ocwen Financial Corporation and PHH Mortgage Corporation's Br. in Resp. to the Ct.'s Instrs. on Mar. 13, 2024*; 4:23-CV-408 (E.D. Tex. Mar. 19, 2024), Dkt. #32 at pp. 19-21. Judge Thompson in the Texas state court action has expressed that she will not order production of the documents at issue "until [the Court] says [Ocwen] can have them." *Tt. of Hr'g on Mot. to Stay, 2024*; 4:23-CV-408 (E.D. Tex. Mar. 19, 2024), Dkt. #32, Exhibit 5 at p. 18.

On March 6, 2024, Ocwen emailed the Court (and Boyd) about the present dispute to request a hearing. *March 6, 2024 Email*, 4:23-CV-408, Dkt. #32, Exhibit 6. On March 7, 2024, Boyd emailed to the Court (and Ocwen) a response to Ocwen's prior email joining in the request for a hearing. *March 7, 2024 Email*, 4:23-CV-408 (E.D. Tex. Mar. 19, 2024), Dkt. #32, Exhibit 7. On March 8, 2024, Ocwen emailed to the Court (and Boyd) a reply to Boyd's response. *March 8, 2024 Email*, 4:23-CV-408 (E.D. Tex. Mar. 19, 2024), Dkt. #32, Exhibit 8. Ocwen and Boyd also

6

emailed further information to the Court regarding the matter. *Multiple Emails to Judge Mazzant*, 4:23–CV–408, Dkt. #32, Exhibit 9; *Relators' Mem. Regarding Ocwen and Its Counsel's Most Egregious Recent Statements to this Ct. and the State Ct.*, 4:23–CV–408 (E.D. Tex. Mar. 19, 2024), Dkt. #32, Exhibit 10. On March 13, 2024, the Court held a hearing on the matter and instructed Boyd and Ocwen to submit letter briefing. *See* 4:23–CV–408, Minute Entry entered March 13, 2024. Ocwen and Boyd each filed letter briefing and an additional response. *Ocwen Financial Corporation and PHH Mortgage Corporation's Br. in Resp. to the Ct.'s Instrs. on March 13, 2024*, 4:23–CV–408, Dkt. #32; *Defs.' Br. Pursuant to Ct.'s Instr. of March 13, 2024*, 4:23–CV–408, Dkt. #34; *Ocwen Financial Corporation and PHH Mortgage Corporation's Reply Br. in Resp. to Defs.' Br. Pursuant to Ct.'s Instrs. of March 13, 2024*, 4:23–CV–408 (E.D. Tex. Mar. 25, 2024), Dkt. #37; *Defs.' Suppl. Br. Pursuant to Ct.'s Instr. of March 13, 2024*, 4:23–CV–408 (E.D. Tex. Apr. 1, 2024), Dkt. #38. On March 22, 2024, Boyd provided an updated privilege log to the Court describing the documents that he produced to SIGTARP. *Privilege Log*, 4:23–CV–408, Dkt. #36 (E.D. Tex. Mar. 22, 2024), Exhibit 1.

On April 18, 2024, the Court ordered Boyd to produce numerous documents for an *in camera* review to evaluate the documents for privilege (4:12–CV–461, Dkt. #418; 4:12–CV–543, Dkt. #628). On the same day, the Court also ordered supplemental briefing from the parties on the issue of waiver (4:12–CV–461, Dkt. #419; 4:12–CV–543, Dkt. #629). On April 26, 2024, both Ocwen and Boyd filed their supplemental briefing (4:12–CV–461, Dkt. #425; 4:12–CV–461, Dkt. #431; 4:12–CV–543; Dkt. #639; 4:12–CV–543; Dkt. #641).

## LEGAL STANDARD

As previously mentioned, the Protective Orders provide that "[t]his Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Information for enforcement of the provisions of this Order following termination of this litigation" (4:12–CV–461, Dkt. #307 ¶ 16; 4:12–CV–543, Dkt. #447 ¶ 16). Federal courts "have, and must have, the inherent authority to enforce their judicial orders and decrees." *United States v. Alcoa, Inc.*, 533 F.3d 278, 287 (5th Cir. 2008). Analysis of a protective order begins with the protective order's plain language. *Moore*, 755 F.3d at 806. The textual interpretation of a court order is ultimately a legal question. *Id.*

"Under [Federal Rule of Civil Procedure] 37(a), a court may impose an award of reasonable expenses incurred in enforcing a protective order, including attorneys' fees, for a party's failure to abide by the protective order, but the court must not order this payment if the failure was substantially justified, or other circumstances make an award of fees unjust." *Glob. Tubing, LLC v. Tenaris Coiled Tubes, LLC*, 621 F. Supp.3d 757, 762 (S.D. Tex. 2022); Fed. R. Civ. P. 37(a). However, "[t]he imposition of sanctions should only follow the violation of a clear order." *Damper Design, Inc. v. Cleveland Elec. Illuminating Co.*, No. 94–1223, 1995 WL 71339, at *2 (Fed. Cir. Feb. 21, 1995).

## ANALYSIS

The Court must consider two (2) issues in resolving the present dispute. First, the Court determines whether it has jurisdiction to enforce the Protective Orders. Second, the Court determines whether it should conduct an *in camera* review.[4]

Ocwen requests that the Court enter an order modifying the protective order to allow any party in the Texas state court action to produce protected confidential information as long as it is produced subject to and treated in accordance with the terms of the Protective Orders. *Ocwen Financial Corporation and PHH Mortgage Corporation's Br. in Resp. to the Ct.'s Instrs. on March 13, 2024*, 4:23–CV–408, Dkt. #32 at p. 22. Ocwen's proposed modification is based upon a similar order that the Court entered in another case. *See Order*, *United States ex rel. Eichner*, 4:19–CV–524 (E.D. Tex. May 31, 2023), Dkt. #90. However, this similar order was the product of a joint motion by all moving parties and was unopposed by the non-moving parties. *See Joint and Unopposed Mot. for Entry of Order Allowing Produc. Of Confidential Docs. From the Fisher Case*, 4:19–CV–524 (E.D. Tex. May 5, 2023), Dkt. #89. The Court declines to enter such an order because of the opposed nature of the present dispute.

### I. The Court Has Jurisdiction to Enforce the Protective Orders.

The Court has jurisdiction to enforce the Protective Orders only to prevent the disclosure of Protected Information.

Although Boyd seeks to enforce the Protective Orders defensively to prevent the compelled production of documents, Boyd has still requested that the Court enforce the Protective Orders.

---

[4] The question before the Court is whether the Protective Orders preclude the production of Boyd's selection of documents from the two (2) underling *qui tam*. The question before the Court is not whether Boyd retained protected materials in violation of the Protective Orders.

9

*Defs.' Br. Pursuant to Ct.'s Instr. of March 13, 2024*, 4:23–CV–408, Dkt. #34 ¶ 8 ("Boyd respectfully asks this Court . . . to enforce the provisions of the *Fisher* Protective Orders protecting Boyd's Work Product"). Ocwen claims that the Court has no jurisdiction to enforce the Protective Orders because it remanded the Texas state court action and no party has requested that the Court enforce the Protective Orders. *Ocwen Financial Corporation and PHH Mortgage Corporation's Br. in Resp. to the Ct.'s Instrs. on Mar. 13, 2024*; 4:23–CV–408, Dkt. #32 at pp. 9–14.

The Court lost its jurisdiction over the underlying Texas state court action when it remanded the case. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996). However, the Court has the inherent authority to enforce the Protective Orders. *See Alcoa, Inc.*, 533 F.3d at 287. Further, where a party seeks to use documents obtained in another case subject to a protective order, then the party should seek relief from the court that entered the protective order. *Adams v. Medtronic, Inc.*, No. 4:19–CV–870, 2024 WL 265860, at *9 (E.D. Tex. Jan. 23, 2024). "[C]ourts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity [and] courtesy." *Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp.3d 925, 947 (N.D. Tex. 2017) (quoting *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D. Md. 2000). "It is well-settled that '[t]he need for comity is not to be downplayed.'" *Id.* (quoting *Mugworld, Inc. v. G.G. Marck & Assocs., Inc.*, No. 4:05–CV–441, 2007 WL 2229568, at *1 (E.D. Tex June 15, 2007).

Boyd has asked the Court to enforce the Protective Orders to prevent Boyd's compelled disclosure of his work product in the Texas state court action. *Defs.' Suppl. Br. Pursuant to Ct.'s Instr. of March 13, 2024*, 4:23–CV–408, Dkt. #38 at pp. 7–8). The Protective Orders provide the

Court with continuing jurisdiction to enforce their terms even though the underlying litigation has ceased (4:12–CV–461, Dkt. #307 ¶ 14; 4:12–CV–543, Dkt. #447 ¶ 14).

However, the Protective Orders provide no specific protection to an attorney's work product (*See* 4:12–CV–461, Dkt. #307 ¶ 15; 4:12–CV–543, Dkt. #447 ¶ 15). Rather, the Protective Orders protect Protected Information from disclosure (4:12–CV–461, Dkt. #307 ¶ 5; 4:12–CV–543, Dkt. #447 ¶ 5). Protected Information consists of "[d]ocuments, including electronically stored information or discovery responses containing Confidential Information disclosed or produced by any party, or nonparty" (4:12–CV–461, Dkt. #307 ¶ 1; 4:12–CV–543, Dkt. #447 ¶ 1). Confidential Information constitutes "[d]ocuments or information containing confidential proprietary and business information and/or trade secrets" (4:12–CV–461, Dkt. #307 at p. 2; 4:12–CV–543, Dkt. #447 at p. 2). A material becomes Protected Information when the disclosing party designates it as Protected Information (4:12–CV–461, Dkt. #307 ¶¶ 1, 3, 7, 9; 4:12–CV–543, Dkt. #447 ¶¶ 1, 3, 7, 9). With one (1) exception, a receiving party may not disclose or return Protected Information to the party that originally produced said Protected Information (*See* 4:12–CV–461, Dkt. #307 ¶ 5; 4:12–CV–543, Dkt. #447 ¶ 5).[5]

For the reasons discussed above, the Court has jurisdiction to enforce the Protective Orders only to prevent the disclosure of Protected Information.

---

[5] Following the termination of the two (2) *qui tam* cases, a counsel for a party that received Protected Information was supposed to return or destroy said Protected Information with 90 days Information (4:12–CV–461, Dkt. #307 ¶ 15; 4:12–CV–543, Dkt. #447 ¶ 15). Any attorney for a party that received Protected Information may keep their own work product that refers or relates to Protected Information (4:12–CV–461, Dkt. #307 ¶ 15; 4:12–CV–543, Dkt. #447 ¶ 15). Ocwen has not asked the Court to enforce the Protective Orders against Boyd (Dkt. 32 at pp. 11–12). Therefore, the Court assumes that Boyd is properly in possession of any Protected Information that he currently has for the purposes of the Order.

**II.     The Court Will Conduct an *In Camera* Review of the Documents Boyd Claims Could Disclose Confidential Information.**

The Court will conduct an *in camera* review of the documents that Boyd claims (1) constitute Protected Information; or (2) refer to Protected Information and that their production would disclose Protected Information.

The Protective Orders state that Protected Information may be "disclosed" only to particular authorized persons (4:12-CV-461, Dkt. #307 ¶ 5; 4:12-CV-543, Dkt. #447 ¶ 5). To "disclose" means "[t]o make (something) known or public; to show (something) after a period of inaccessibility or of being unknown; to reveal." *Disclose*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Court finds that two (2) categories of documents could disclose Protected Information if produced: (1) documents that constitute Protected Information; and (2) documents that refer to Protected Information where said documents' production would disclose Protected Information.

The Court cannot determine which documents in Boyd's privilege log fall into these categories. Therefore, an *in camera* review is appropriate. The Court requires a list of documents from Boyd that he believes to fall within these categories.

For the first category of documents, the Court requires each document that Boyd claims constitutes Protected Information and supporting documentation where a producing party designated said document as Protected Information.

For the second category of documents, the Court requires each document that falls within the category, the underlying Protected Information, and supporting documentation where a producing party designated said document as Protected Information.

As previously mentioned, Boyd's claims of work product privilege are not relevant to the Court's analysis because the Protective Orders only protect Protected Information from

disclosure, not work product (4:12–CV–461, Dkt. #307 ¶¶ 5, 15; 4:12–CV–543, Dkt. #447 ¶¶ 5, 15).

## CONCLUSION

It is therefore **ORDERED** that Samuel L. Boyd and Boyd & Associates' request for the Court to enforce the Protective Orders and conduct an *in camera* review of certain documents is hereby **GRANTED in part**. The Court finds that an *in camera* review is necessary to prevent the disclosure of Protected Information. Within 21 days following the issuance of this Order, Samuel L. Boyd and Boyd & Associates shall submit to the Court a list of documents that they claim (1) constitute Protected Information; or (2) refer to Protected Information and that their production would disclose Protected Information.

It is further **ORDERED** that for each document falling within the first category, Samuel L. Boyd & Boyd & Associates shall submit to the Court within 21 days following the issuance of this Order: (1) the document that they claim constitutes Protected Information; and (2) supporting documentation where a producing party designated said document as Protected Information.

It is further **ORDERED** that for each document falling within the second category, Samuel L. Boyd & Boyd & Associates shall submit to the Court within 21 days following the issuance of this Order: (1) the document at issue; (2) the underlying Protected Information; and (3) supporting documentation where a producing party designated said document as Protected Information.

**IT IS SO ORDERED**.

SIGNED this 28th day of May, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE